Perry and Mary MOSEANKO and Dennis and Denise Dockter, Appellants,

v.

Clayton YEUTTER, Secretary of Agriculture; Vance Clark, Administrator of FHA; Milton Hertz, National Administrator of Agricultural Stabilization and Soil Conservation; Ralph W. Leet, State Director of FmHA; William Christmen, State Director of Agriculture Stabilization and Soil Conservation, Appellees.

Perry and Mary MOSEANKO, Dennis and Denise Dockter, on behalf of themselves and others similarly situated, Appellants,

v.

Clayton YEUTTER, Secretary of Agriculture; Vance Clark, Administrator of FHA; Milton Hertz, National Administrator of Agricultural Stabilization and Soil Conservation; Ralph W. Leet, State Director of FmHA; William Christmen, State Director of Agricultural Stabilization and Soil Conservation, Appellees.

Nos. 90–5341, 90–5546.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1991.

Decided Sept. 10, 1991.

Ervin J. Lee and Paul A. Temanson, Minot, S.D., argued (Lowell P. Bottrell, Fargo, N.D., Edward B. Reinhardt, Jr., New Town, N.D., Ervin J. Lee and Paul A. Temanson, Minot, N.D., on the brief) for appellants.

Michael E. Robinson, argued (Stuart M. Gerson, Stephen D. Easton, Robert S. Greenspan and Michael E. Robinson, on the brief), Washington, D.C., for appellees.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

This appeal concerns plaintiffs' challenge of the procedures adopted by the Farmers Home Administration (FmHA) in 1986 to offset the farm program payments of farmers whose FmHA loans were delinquent. Two weeks after plaintiffs filed their class

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of    Minnesota, sitting by designation.

action complaint, FmHA instituted a moratorium on the use of the challenged regulations and later issued new regulations which provided many of the procedural protections plaintiffs had sought in their complaint.

The Moseankos agree these new regulations render their case moot, because none of their farm program payments were actually offset under the challenged regulations. The Dockters were subject to an "emergency" offset under the old regulations, however, and they contend FmHA should be ordered to refund the money that was offset under the "emergency" procedures. In addition, both the Moseankos and the Dockters argue they should receive attorney's fees as prevailing parties under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), because the government's position in support of the challenged regulations was not "substantially justified."

We agree with plaintiffs that the district court misapplied the law and abused its discretion in concluding the government's position in support of the old "emergency" procedures was substantially justified. Accordingly, we reverse the court's attorney's fee order and remand with directions that plaintiffs be awarded their fees in connection with this litigation. We affirm the court's dismissal of the Dockters' request for an immediate return of the funds offset under the emergency procedures, however, because we conclude the hearing provided in the new regulations strikes the appropriate balance between the rights of the plaintiffs and the interests of the government under the circumstances presented in this case.

I.

We begin with the facts, which are undisputed. On October 25, 1982, Congress en-

acted the Debt Collection Act of 1982. Pub.L. No. 97–365, 60 Stat. 1749 (1982). The Act was formulated in response to reports by the General Accounting Office and Office of Management and Budget highlighting the magnitude of delinquent debt owed to the government. *See* S.Rep. No. 97–378, 97th Cong., 2d Sess. 3 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 3377, 3379.[1] The Act contained provisions requiring credit applicants to supply a social security number, allowing agencies to screen credit applicants against IRS files of delinquent taxpayers, allowing agencies to report delinquent debtors to credit bureaus, and allowing agencies to contract with private collection services. *Id.* §§ 2–4, 7, 13, 96 Stat. 1749–51, 1752–53, 1757–58. Section 5 of the Act authorized the offset of a federal employee's salary for general debts owed to the government; section 10 authorized an administrative offset of funds otherwise owed to the debtor by the government. *Id.* §§ 5, 10, 96 Stat. 1751–52, 1754–55.

Under section 10, now codified at 31 U.S.C. § 3716, an agency could collect a claim by administrative offset only after prescribing regulations on collecting by way of offset and only after giving the debtor

> (1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section;
>
> (2) an opportunity to inspect and copy the records of the agency related to the claim;
>
> (3) an opportunity for a review within the agency of the decision of the agency related to the claim; and
>
> (4) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim.

---

**1.** Over half of the loans, interest, unpaid taxes, and other debts due to the government in 1979 was delinquent. S.Rep. No. 97–378, 97th Cong., 2d Sess. 3 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 3377, 3379. Seventy per-

cent of the $25 billion in delinquent debt was owed to three agencies: the IRS, the Veterans' Administration, and the Department of Education. S.Rep. No. 97–287, 97th Cong., 1st Sess.

31 U.S.C. § 3716.[2]

General regulations implementing the Act were promulgated by the Comptroller General and the Attorney General of the United States. These regulations, called the Federal Claims Collection Standards, provided that each agency was to establish its own implementing regulations to determine, on a case-by-case basis, whether an administrative offset should be employed. *See* 4 C.F.R. § 102.3 (Federal Claims Collection Standards). The regulations required agencies to consider "not only whether administrative offset can be accomplished, both practically and legally, but also whether offset is best suited to further and protect all of the Government's interests." *Id.* § 102.3(a)(2). *See* 31 U.S.C. § 3716(b). In particular, the regulations advised that in evaluating whether offset should be employed,

> agencies may give due consideration to the debtor's financial condition, and are not required to use offset in every instance in which there is an available source of funds. Agencies may also consider whether offset would tend to substantially interfere with or defeat the purposes of the program authorizing the payments against which offset is contemplated.

4 C.F.R. § 102.3(a)(2).

**A. FmHA's Initial Offset Regulations**

Shortly after the Debt Collection Act was passed, FmHA suspended its use of administrative offsets as a means of collecting delinquent farm loans.[3] FmHA is a lender of last resort for farmers who cannot obtain credit from private lenders. The agency makes direct loans to farmers and ranchers through farm ownership, farm operating, and emergency loan programs. *See* H.R.Rep. No. 100–295(I) 71 (1987) *reprinted in* 1987 U.S.Code Cong. & Admin.News 2723, 2742.[4] Consistent with FmHA's mission to assist family farmers, these loan programs include provision for family living and farm operating expenses. *See generally Coleman v. Block*, 562 F.Supp. 1353, 1364 (D.N.D.1983); *id.*, 580 F.Supp. 194, 196–98 (D.N.D.1984); *id.*, 663 F.Supp. 1315, 1324 (D.N.D.1987), *vacated as moot*, 864 F.2d 604 (8th Cir.1988), *cert. denied*, 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989).

As of September 30, 1987, twenty-four percent of the 8,888 FmHA farm program borrowers in North Dakota were delinquent on their loan obligations. *See* Leet Aff. para. 2.[5] FmHA loan programs are not automatically terminated by delinquency, however. Rather, the agency is given broad authority to compromise and adjust loans and may grant loan deferrals where, for example, the borrower's inability to pay is due to circumstances beyond the borrower's control. *See Coleman*, 562 F.Supp. at 1360–61, 1364; *id.*, 580 F.Supp. at 198–99.

FmHA's procedures for liquidating outstanding loans were enjoined in *Coleman v. Block*, when the district court ruled FmHA could not terminate a farmer's liv-

---

14 (1981), *reprinted in* 1982 U.S.Code Cong. & Admin.News 3413, 3425.

**2.** Similar protections were provided to debtors under the salary offset provision. Pub.L. No. 97–365, § 5(a), 96 Stat. 1749, 1751 (1982). In addition, the amount deducted pursuant to the salary offset provision was not to exceed 15% of the debtor's disposable pay unless the debtor consented in writing to a higher percentage. *Id.* § 5(a), 96 Stat. at 1751.

**3.** Prior to enactment of the Debt Collection Act, FmHA used administrative offsets to collect payments on delinquent loans only after ordinary collection efforts, including assignments and liquidation of security, had proven ineffective. *See* 7 C.F.R. § 1962.48 (1980), 44 Fed.Reg. 64,796 (1979).

**4.** Ownership loans are used to acquire, enlarge, or improve farms. Operating loans enable farmers to meet their short-term operating expenses such as the purchase of seed, feed, livestock, fertilizer, farm equipment, and supplies. The emergency disaster and economic emergency loan programs assist farmers with losses caused by natural disasters or with economic problems beyond their control. *See generally* H.R.Rep. No. 100–295(I), 100th Cong., 1st Sess. 71 (1987), *reprinted in* 1987 U.S.Code Cong. & Admin.News 2723, 2742.

**5.** Nationwide, approximately a third of the 275,000 FmHA borrowers were delinquent on their loan payments in 1986. *See* H.R.Rep. No. 100–295(I) at 72, *reprinted in* 1987 U.S.Code Cong. & Admin.News at 2743.

ing and operating allowance, accelerate a farmer's debt, or foreclose on the property of any farmer-borrower without prior notice of (1) the reasons for the proposed action, (2) an explanation of the options for loan deferral or restructuring, and (3) an opportunity for a hearing. *Coleman,* 562 F.Supp. at 1367–68 (1983 preliminary injunction); 580 F.Supp. at 210–11 (1984 permanent injunction).

Prior to the *Coleman* preliminary injunction in 1983, an FmHA county supervisor who found a borrower was in default could liquidate the farmer's loan by refusing to release FmHA's lien on the farmer's crops or livestock. This refusal effectively terminated the farmer's income for family living and farm operating purposes, unless the farmer had income from another source. Faced with the elimination of their income stream, many borrowers sold off their property to pay the FmHA debt. If borrowers did not cure their default within sixty days of FmHA's decision to liquidate, their loans were accelerated and the entire balance was due immediately. Only then did FmHA's pre–1983 procedures give farmers the right to a hearing. *Coleman,* 562 F.Supp. at 1363; *id.,* 580 F.Supp. at 200–01.

The *Coleman* court ruled these procedures violated due process, and ordered that debtors be given notice of loan restructuring options and the right to a hearing *prior* to FmHA's termination of allowances for family living and farm operating expenses. *Id.,* 562 F.Supp. at 1367; 580 F.Supp. at 203–08, 210–11. In response to

the *Coleman* court's orders, FmHA employed new forms which were sent to borrowers prior to any adverse action. Certain aspects of these new forms were again declared unconstitutional by the court on May 7, 1987. The court ordered that amended forms be used in all future accelerations. *Id.,* 663 F.Supp. at 1333, 1342.

During the pendency of the *Coleman* litigation, on November 26, 1986, FmHA issued an interim rule which contained the procedures FmHA intended to use to exercise administrative offset pursuant to the Debt Collection Act, the Federal Claims Collection Standards regulations, and an interim rule published in February, 1985, by the Department of Agriculture.[6] *See* FmHA Implementation of Administrative Offset, 51 Fed.Reg. 42,820 (1986).

FmHA began to implement the offset interim rule in North Dakota in July, 1987. Only FmHA program borrowers whose accounts had been accelerated prior to May 7, 1987, were subject to the offset. *See* Leet Aff. para. 3. On August 20, 1987, plaintiffs Dennis and Denise Dockter received a letter from FmHA informing them that FmHA would "begin immediately" to collect their delinquent FmHA loans through an administrative offset against "any amounts that would otherwise be payable to you from another Federal agency." FmHA implemented the offset by sending form letter 1951–3 to the Agricultural Stabilization and Conservation Service (ASCS)[7] requesting the ASCS to forward all payments due the Dockters to the FmHA.[8]

---

**6.** The Department of Agriculture interim rule set forth certain standards to be applied Department-wide in using administrative offsets and authorized each agency within the Department to prescribe its own additional implementing regulations. *See* Subpart B—Debt Collection, 7 C.F.R. §§ 3.21–.36.

**7.** The Agricultural Stabilization and Conservation Service (ASCS) is the agency within the Department of Agriculture which is generally responsible for administering commodity production adjustment, acreage set-aside, and conservation programs.

**8.** The Dockters were one of the 226 borrowers in North Dakota who received FmHA form letter 1951–2, which was used when the County

Supervisor had reason to believe (1) another agency was about to make a payment to a delinquent farmer-borrower, (2) failure to offset the payment would substantially prejudice the government's ability to collect, and (3) there was not enough time to use FmHA form letter 1951–1. Form letter 1951–2 could also be used if the borrower already had an FmHA appeal hearing to contest the existence and delinquency of the debt. *See* Leet Aff. para. 4; FmHA Implementation of Administrative Offset, 51 Fed.Reg. 42,820, 42,821 (1986). If form letter 1951–2 was used, the regulations directed the County Supervisor to prepare and mail form letter 1951–3 immediately. 51 Fed.Reg. at 42,822.

On September 15, 1987, the Dockters wrote to the FmHA to protest the offset and to request a hearing. The Dockters maintained that to offset their farm program payments would cause a substantial hardship and would defeat the purposes of the farm programs they participated in. They argued that the notice they received violated the Debt Collection Act and their due process rights. Finally, they advised FmHA that they had pledged their farm program payments to the Sargent County Bank in order to obtain a farm operating loan. They told FmHA they would not be able to pay the bank without receipt of these payments.

The Dockters also attempted to call ASCS, but to no avail. On October 5, 1987, ASCS implemented FmHA's offset by diverting $3,294 in PIK certificates, the Dockters' final corn deficiency payment, to the FmHA. On October 9, the FmHA County Supervisor informed the Dockters that their September 15 letter "[did] not have any credence," and that the only issues they could properly raise to contest the offset were whether their debt existed and was delinquent.

On November 23, 1987, the Dockters and the Moseankos filed this suit, seeking to enjoin FmHA's offset process and to obtain the return of all farm program payments which had been diverted to FmHA since July, 1987.[9] Plaintiffs' requested relief included a court order requiring FmHA to promulgate new regulations consistent with the Debt Collection Act, which would be applied before any administrative offset action could be taken to deprive farmer-borrowers of farm program payments needed to carry on their farming operations or to provide income for necessary family living expenses. Plaintiffs maintained the new regulations should provide that the borrower would receive prior notice of the proposed offset, would be advised of the facts which form the basis for the proposed action, and would be afforded an opportunity (1) to present additional facts or comments, (2) to make a written offer to repay, and (3) to request a hearing under procedures which comport with the requirements of due process.

Two weeks later, on December 7, 1987, the FmHA agreed to suspend the use of the challenged offset procedures in North Dakota. The next day, the government made the moratorium effective nationwide. One month after the moratorium was announced, on January 6, 1988, Congress passed the Agricultural Credit Act of 1987, Pub.L. No. 100–233, 101 Stat. 1568 (1988). Title VI of the Act, §§ 601–626, made extensive changes in the debt collection and loan restructuring efforts of FmHA. *See Coleman v. Lyng,* 864 F.2d at 608–09. These changes mandated the restructuring rather than foreclosure of certain loans and provided enhanced rights to farmer-borrowers, consistent with the *Coleman* court's orders. *See Id.* at 609–11 (citing S.Rep. No. 100–230, 100th Cong. 1st Sess. 38).[10]

FmHA sent 137 borrowers in North Dakota FmHA form letter 1951–1. This letter gave the borrower an opportunity to make a written offer to repay the delinquency if the borrower could show that offset would cause undue financial hardship or would be unfair. *See* Leet Aff. para. 4. For those borrowers who had received form letter 1951–1, no offset would take place until after the borrower's response time had run or FmHA had made a decision on any request for review or offer to repay. *See* 51 Fed.Reg. at 42,822.

9. The Moseankos had also received a form 1951–2 letter and feared the immediate offset of their farm program payments. The Moseankos filed an affidavit with the court indicating that they "must rely on these payments totally to pay our 1987 fall and summer farm operating and living expenses."

10. The House Report was particularly critical of FmHA's handling of delinquent loans. The Report stated that a majority of the House Agriculture Committee members

were decidedly frustrated with Farmers Home Administration's intransigence in dealing with problem loans in a sensitive and compassionate manner commensurate with its role as the Federal government's lender of last resort. During the last several years, Federal courts have frequently over-ridden FmHA and virtually mandated many of FmHA's policies and management actions. The Committee would have much preferred the Agency's adherence to the compassionate spirit of the law and the Agency's long tradition helping needy borrowers.

H.R.Rep. No. 100–295(I) at 71, *reprinted in* 1987 U.S.Code Cong. & Admin.News at 2742.

The Agricultural Credit Act of 1987 suspended all FmHA loan accelerations, liquidations, or foreclosures, pending regulations to implement the provisions of the Act. These provisions required FmHA to provide a notice to all delinquent farmer-borrowers, including those whose loans had been previously accelerated, prior to instituting any adverse action against them. The Act expressly provided that the notice was to include an explanation of all FmHA loan servicing programs and information on how to apply for the programs. *Coleman*, 864 F.2d at 609–10.

B. FmHA's New Offset Regulations

Approximately a year and a half after the moratorium on the use of administrative offsets and the passage of the Agricultural Credit Act, FmHA issued a new proposed rule concerning implementation of administrative offsets. *See* Administrative Offset, FmHA Proposed Rule, 54 Fed. Reg. 34,773 (1989). After receiving comments, FmHA published final regulations on March 26, 1990. Administrative Offset, FmHA Final Rule, 55 Fed.Reg. 11,000 (1990) (to be codified at 7 C.F.R. Part 1951). FmHA acknowledged that pursuant to the stipulation in this case, it had rescinded all pending FmHA form letter 1951–3 notices sent under the old regulations to the ASCS requesting the offset of payments due North Dakota farmers.[11] The Moseankos and the Dockters thus are no longer subject to any offset request issued under the old regulations, and any future offset action by FmHA must conform to the procedures set forth in the new regulations.

These new regulations provide many of the protections which plaintiffs sought to compel the agency to provide. The new regulations 1) eliminate the use of the "emergency" offsets, which were used to immediately offset the farm program payments due to the Dockters in 1987; 2) provide all farmer-borrowers with prior notice of the FmHA's intent to use administrative offsets; 3) give farmer-borrowers the right to present any reasons why administrative offset should not be used, including that the use of administrative offset would create an extreme hardship; 4) give farmer-borrowers the right to a face-to-face meeting with an FmHA decision-making official prior to any offset being implemented; and 5) give farmer-borrowers the right to appeal the offset decision to an independent FmHA National Appeals Staff. *Id.* 55 Fed.Reg. at 11,006–07 (to be codified at 7 C.R.F. § 1951.104). The new regulations also specifically exempt from offset initial payments for planting expenses under the Conservation Reserve Program, and allow for similar exemptions where the offset would substantially interfere with or defeat the purpose of the government program. *Id.* 55 Fed.Reg. at 11,002, 11,005–06 (to be codified at 7 C.F.R. § 1951.103(e)).[12]

With regard to the farmer-borrowers whose farm program payments were offset under the initial regulations prior to the moratorium, the new regulations provide a right to request a hearing if any farmer-borrower believes the previous offset action by FmHA was "contrary to this Administrative offset regulation." *Id.* 55 Fed. Reg. at 11,007 (to be codified at 7 C.F.R.

---

**11.** In other parts of the country the notices were suspended rather than withdrawn. The new regulations indicate that FmHA will withdraw the notices of those farmers whose debts have been restructured under the Agricultural Credit Act of 1987, and will not enforce the notices of those farmers currently being considered for debt relief under the Act until they have completed the restructuring process. *See* Administrative Offset, FmHA Final Rule, 55 Fed.Reg. 11,000, 11,001 (1990).

**12.** The Dockters had argued before the district court that if their Conservation Reserve Program (CRP) payments were offset they could

not afford to buy the grass seed to comply with the program. FmHA's 1990 regulations expressly indicate that offset of the initial CRP payment will not be taken, because such offset would likely result in the land not being planted for conservation purposes. *See* Administrative Offset, FmHA Final Rule, 55 Fed.Reg. 11,000, 11,-005–006 (1990) (to be codified at 7 C.F.R. § 1951.103). The FmHA has also determined that it will not allow offsets of FmHA operating loans by other federal agencies, because such offsets would defeat the purpose of the farm operating loan program. *Id.* 55 Fed.Reg. at 11,005 (to be codified at 7 C.F.R. § 1951.102(b)).

§ 1951.104(j)). The district court found that this provision sufficiently cured any problems inherent in the 1986 regulations, and hence dismissed as moot the Dockters' request for the return of their corn deficiency payment. The court also rejected plaintiffs' request for attorney's fees under the Equal Access to Justice Act. The court found that plaintiffs were prevailing parties because their suit had been the catalyst for both the moratorium on the use of the challenged regulations and the promulgation of new regulations. The court nonetheless concluded the government's defense of the old regulations was "substantially justified" because the new regulations primarily added procedural protections for farmer-borrowers.

## II.

■ We turn first to the question of whether the new regulations have rendered moot the Dockters' request for the return of their corn deficiency payment.[13] A case is moot if there is no reasonable expectation that the alleged wrong will recur and interim relief or events have completely eradicated the effects of the alleged wrong. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

In the *Coleman* case, this Court ruled the passage of the Agricultural Credit Act rendered FmHA's appeal moot because "Congress has required the FmHA to do everything the District Court ordered on constitutional grounds." *Coleman*, 864 F.2d at 609. The Court also dismissed the

farmers' cross-appeal, reasoning that for borrowers whose loans had *not* been accelerated prior to the district court's May 7, 1987, order, the Agricultural Credit Act mandated as much relief as the plaintiffs claimed. For those whose loans *had* been accelerated, but who had not yet lost title to their land, the Court ruled the Agricultural Credit Act provided more relief than the district court ordered, but less than the plaintiffs had requested.[14] The Court nonetheless concluded the Agricultural Credit Act redefined the property right plaintiffs were asserting to include only the remedy provided for in the Act. *Coleman*, 864 F.2d at 611–12. The claims of the plaintiffs whose loans had been accelerated under the unconstitutional procedures thus became moot because, at the time of the appeal, plaintiffs were entitled to no more than what the Agricultural Credit Act provided.

Like the second group of farmers in the *Coleman* case, plaintiffs in this case seek more than what the agency's new regulations provide. The new regulations provide an opportunity for plaintiffs to request a hearing to have their corn deficiency payment offset reviewed under the new regulations. Plaintiffs have not yet requested such a hearing and maintain the court should simply order FmHA to return their money. The district court concluded the new regulations gave plaintiffs all they were entitled to under the constitution. Plaintiffs challenge this holding on appeal, arguing that a hearing two and one half years after their property was seized does not satisfy due process.

13. Plaintiffs withdrew their motion for class certification at the time the FmHA agreed to suspend the use of administrative offsets under the old regulations. Although they renewed their request for class certification in their motion for summary judgment, no class has ever been certified by the district court. Plaintiffs' briefs on appeal request the return of all funds seized under the 1986 regulations, a total of approximately $4.3 million dollars. Because the district court declined to address the class certification question, we consider in this appeal only the Dockters' individual request for the $3,294 in PIK certificates ASCS offset on October 5, 1987.

14. The Agricultural Credit Act entitled these borrowers to notice of loan servicing options, an opportunity to reprocess their applications for loan servicing, and a moratorium on foreclosure actions until final regulations were in place. The Act also provided for release of up to $18,000 in living and operating expenses for one year. Plaintiffs had asked the district court to reverse all accelerations outright and had argued they were entitled to a release of all the living and operating expense payments FmHA had wrongfully withheld. For some farmers, this amount would exceed the $18,000 provided by Congress. *See Coleman*, 864 F.2d at 610–11 & n. 6.

■ The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976). The three considerations guiding our due process inquiry are (1) the private interest which is affected by the official action; (2) the risk of an erroneous deprivation of this interest through the procedures used, and the probable value of additional procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional procedural requirements would entail. *Id.* at 335, 96 S.Ct. at 903.

The Dockters maintain their interest in receiving farm program payments from ASCS "goes right to the heart" of their ability to maintain their livelihood through farming. FmHA's seizure of the PIK certificates, which were pledged to the Sargent County Bank, made it impossible for the Dockters to repay their 1987 farm operating loan. A portion of this loan remains unpaid and had to be refinanced in 1988 and again in 1989.

FmHA concedes that the private interest affected by the potential use of administrative offset is, in this case, significant. The agency argues, however, that the risk of erroneous deprivation is small based on the debt servicing and pre-offset procedures afforded the plaintiffs and based on the opportunity for hearing provided in the new regulations. The agency further argues that the relief proposed by the plaintiffs—the outright return of their funds—ignores the government's substantial interest in collecting delinquent and overdue debts. FmHA maintains that allowing the agency to retain the funds pending the outcome of the hearing provided in the new regulations strikes the proper balance between the private and governmental interests involved in this case, particularly when it is highly unlikely that FmHA could ever recover any funds that were returned to the plaintiffs.

Plaintiffs concede the proper remedy for a procedural due process violation must be determined by measuring the remedy sought against the nature of the interest protected by the constitutional right in question. *See generally Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). The remedy ordered by the *Coleman* court is instructive in this regard. In determining whether to reverse the accelerations of those farmer-borrowers who still retained title to their land but whose loans had been accelerated without proper notice of loan servicing options, the *Coleman* court observed

These borrowers have suffered the effects of having their living and operating releases terminated, and in some cases, of having their other government payments confiscated [presumably through administrative offset]. This court, however, cannot know how many of these borrowers have suffered actual damages as a result of the constitutional flaws in the notice process. Some of the borrowers may have been fully informed of the various options open to them despite the flaws. Some may not have been adversely affected by the binding choices required by FmHA form 1924–26. Some may have been in such serious financial difficulty that no available program could keep them on the farm.

*Coleman*, 663 F.Supp. at 1342.

Based on these uncertainties, and the heavy financial cost and disruption of activity that reversal of the accelerations would involve, the court concluded its remedy should be tailored to assist the individuals actually harmed by the faulty notices. *Id.* Rather than reversing the accelerations outright, the court ordered all foreclosure actions enjoined until 30 days after corrected notices and explanations of loan servicing options had been made available in FmHA offices. *Id.* at 1342–43.

■ As in *Coleman*, we cannot say whether the Dockters' PIK certificates would have been offset had the procedure mandated by the new regulations been followed. As their account now stands, the Dockters' loan balance has been credited for the amount diverted from ASCS. No additional funds can be offset until FmHA

follows the procedures outlined in the new regulations. With respect to the $3,294 offset under the old "emergency" procedures, the Dockters now have the opportunity to show the offset would not have occurred had the new regulations been followed. If they make this showing, they can obtain the return of their money with interest. *See* 55 Fed.Reg. at 11,007 (to be codified at 7 C.F.R. § 1951.105(3)). *See generally Allison v. Yeutter*, No. 90–5565 (8th Cir. appeal pending). We conclude this remedy most fairly balances the Dockters' rights under the due process clause and the government's interest in collecting delinquent debts by way of offset, and for this reason, we affirm the district court's dismissal of their action.

### III.

Finally, we reach the question of attorney's fees. Both the Dockters and the Moseankos argue the district court erred in refusing to award them attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). The Equal Access to Justice Act provides that "a court shall award to a prevailing party ... fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.*

■ There is no dispute in this case regarding whether plaintiffs are prevailing parties. FmHA concedes, and the district court found, that they were. *See generally Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989). The issue presented on appeal is whether the government's position in support of the emergency procedures was, and is, substantially justified. The burden of proving substantial justification falls in this case on FmHA. *See SEC v. Comserv Corp.*, 908 F.2d 1407, 1411 (8th Cir.1990); *Keasler v. United States*, 766 F.2d 1227, 1231 (8th Cir.1985). The test for substantial justification is one of "reason-

ableness," and we review the district court's determination of substantial justification under an abuse of discretion standard. *Pierce v. Underwood*, 487 U.S. 552, 563–68, 108 S.Ct. 2541, 2549–52, 101 L.Ed.2d 490 (1988); *SEC*, 908 F.2d at 1411.

■ In finding that the government's position was "substantially justified," the district court compared the new regulations with the challenged regulations. The court concluded that because the new regulations contained only additional *procedural* safeguards, the government's position in support of the old regulations was substantially justified. We agree with plaintiffs that the district court misperceived the relevant inquiry under the EAJA. The plaintiffs' suit challenged the old regulations on procedural grounds. Their suit was the catalyst for FmHA's moratorium and promulgation of new regulations containing the procedural safeguards sought by the plaintiffs. Although no class was ever certified by the district court, the moratorium and the new regulations provided significant benefits not only to the Dockters and the Moseankos, but to thousands of farmers throughout the country.[15]

■ To preclude an award of fees under the EAJA, the government must establish that its underlying conduct in promulgating and implementing the 1986 offset procedures *and* its position in the litigation were "substantially justified." *See* 28 U.S.C. § 2412(d)(2)(D); *Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir.1988). In this case, while FmHA has now abandoned the emergency procedures challenged by the plaintiffs, it has continued to defend FmHA's use of these procedures as lawful. This position is not reasonable.

The Debt Collection Act gives farmer-borrowers procedural rights in connection with the government's decision to use administrative offset, rights which were not honored by the emergency procedures contained in FmHA's 1986 regulations. FmHA form letter 1951–2, which the Dock-

---

**15.** During the moratorium, the Dockters received over $80,000 in CRP and ASCS program payments which otherwise would have been off-set. These payments have enabled the Dockters to maintain their family farming operation.

ters received, provided for *immediate* offset of any payments from any federal agency. The Debt Collection Act specifically provides that an agency may collect by administrative offset only *after* giving the debtor written notice of the agency's *intent* to collect the claim by offset. 31 U.S.C. § 3716(a)(1) (emphasis supplied).[16]

The emergency procedures also afforded no opportunity for the Dockters either to raise their claims of substantial hardship or to enter into a repayment agreement. Again, the Debt Collection Act expressly states offset may only occur *after* an opportunity for a review of the agency's decision and an opportunity to make a written agreement to repay. 31 U.S.C. § 3716(a)(3) & (4). FmHA suggests there was no need to provide such opportunities because FmHA had already accelerated the Dockters' loans and hence had already determined these issues against them. *See* 4 C.F.R. § 102.3(b)(2)(ii). FmHA admits, however, that offset action in North Dakota was limited to those borrowers whose loans had been accelerated prior to May 7, 1987. The Dockters' letter of September 15, 1987 to FmHA indicates that as part of the acceleration process they received the 1924–26 form that the *Coleman* court ruled unconstitutional in its May 7, 1987, order.[17] Although the record does not indicate whether the Dockters have subsequently restructured their loans pursuant to the revised notices mandated by Congress in the Agricultural Credit Act of 1987, it is clear that no revised notice was received by the Dockters prior to the offset of their PIK certificates in October, 1987. Under these circumstances, we cannot accept FmHA's bald assertion that the Dock-

ters' rights were honored under its "emergency" offset procedures.

We cannot help but note that at the time FmHA issued the 1986 regulations, the agency had been prohibited by the *Coleman* court from taking any adverse action against delinquent farmer-borrowers without giving them adequate notice and without granting them a prior hearing. FmHA revised its procedures for accelerating loans, but then issued and now seeks to defend "emergency" offset procedures which took from farmers funds required for family living and farm operating expenses without prior notice and opportunity for a hearing. These emergency procedures violated the express language of the Debt Collection Act. FmHA has now abandoned them as "unnecessary." *See* 54 Fed. Reg. at 34,774. Under these circumstances, the government's support of the emergency procedures was not, and is not, substantially justified. *See generally Pierce*, 487 U.S. at 570, 108 S.Ct. at 2552–53; *United States v. One 1984 Ford Van*, 873 F.2d 1281, 1282–83 (9th Cir.1989); *Thomas*, 841 F.2d at 335–36.

## IV.

In conclusion, we reiterate the sole issues before the Court are (1) whether the FmHA must immediately refund the $3,294 which was diverted from ASCS and credited to the Dockters' FmHA loan balance under "emergency" offset procedures; and (2) whether the government's position in support of the use of these "emergency" procedures was substantially justified. With regard to the Dockter's request for return of their PIK certificate funds, we hold the remedy provided in the new regu-

---

**16.** FmHA argues that the Dockters' corn deficiency payment was not actually offset until October 5, 1987, giving the Dockters over a month to challenge FmHA's decision. FmHA fails to acknowledge, however, that any delay in offsetting the Dockters' farm program payments was caused not by FmHA, which effectively ignored the Dockters' attempts to challenge the offset, but rather by the timing of ASCS in issuing the Dockters' PIK certificates.

**17.** The Dockters appear to be in the group of borrowers whose loans had been accelerated,

but who still retained their property. The district court in *Coleman* refused to reverse the accelerations of these borrowers' loans, but enjoined any foreclosure action against them until 30 days after revised notice forms and explanations of loan servicing options were made available in FmHA offices. The Agricultural Credit Act of 1987 entitled these borrowers to notice of loan servicing options, an opportunity to reprocess their applications for loan servicing, and a moratorium on foreclosure actions until final regulations were promulgated.

lations strikes the appropriate balance between the rights of farmer-borrowers and the interests of FmHA to collect delinquent debts. We therefore affirm the district court's dismissal of the Dockters' claim for immediate return of their $3,294. The Dockters retain the right to challenge the offset of these funds through the administrative hearing process established in the new regulations.

With regard to the question of attorney's fees, we find the district court abused its discretion in holding the government's position was substantially justified because plaintiffs' suit was a catalyst for only procedural changes in FmHA's offset regulations. These procedural protections are mandated by statute and should have been well known to FmHA officials. The government's support of regulations which failed to include these protections is unjustified and unreasonable. We reverse the district court's order regarding plaintiffs' fee request and remand with directions that plaintiffs be awarded their fees in connection with this litigation.