Wilbur **LEWIS**, Plaintiff,

v.

Dan **GLICKMAN**, Secretary of the United States Dept. of Agriculture, et al., Defendant.

No. 98–4151–SAC.

United States District Court, D. Kansas.

June 12, 2000.

Mary K. Ramirez, Office of United States Attorney, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court on the following motions: the plaintiff, Wilbur Lewis's ("Lewis") appeal of two decisions by the Farm Service Agency, ("FSA") pursuant to the Administrative Procedures Act ("APA"), (Dk.30), and the USA's motion for summary judgment on Lewis's non-APA claims, as further detailed below. (Dk.55).

### I. NATURE OF THE CASE

Lewis is a 79 year old farmer who has received loans from the FSA for many years. The FSA, previously known as the FmHA, is a lender of last resort for farmers who cannot obtain credit from private lenders. The agency makes direct loans to farmers and ranchers through farm ownership, farm operating, and emergency loan programs. See H.R.Rep. No. 100–295(I) 71 (1987) reprinted in 1987 U.S.Code Cong. & Admin. News 2723, 2742. *Moseanko v. Yeutter,* 944 F.2d 418, 421 (8th Cir.1991).

Lewis has filed a "mixed" complaint which seeks review of two decisions by the FSA, and additionally alleges numerous claims which are not appeals of final administrative actions, *i.e.,* age discrimination, constitutional violations, and violations of the Equal Credit Opportunity Act, arising from the manner in which he has allegedly been treated by the government throughout the past nine or more years. One administrative decision upheld the FSA's offset of a government payment to Lewis, and the other decision determined that Lewis's failure to act in good faith rendered him ineligible to restructure his debt. The court will first address the government's motion for summary judgment, and will then address Lewis's ap-

peals from the two administrative decisions.

## II. SUMMARY JUDGMENT MOTION

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995) (*quoting Bacchus Industries, Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)).

The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir.1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

■ Although this case is not an employment discrimination case, Lewis has alleged age discrimination in the government's provision of credit, and the court finds that the same cautions applicable to employment discrimination cases are applicable here. Summary judgments " 'should seldom be used in employment discrimination cases.' " *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir.1999) (*quoting Smith v. St. Louis University*, 109 F.3d 1261, 1264 (8th Cir. 1997)). Because discrimination claims often turn on the employer's intent, courts ordinarily consider summary judgment inappropriate to settle an issue like intent, *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir.1994); *see Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir.1994) ("[T]he summary judgment

standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." (quotation and citation omitted)). Even so, summary judgment is not "per se improper," *Washington v. Lake County, Ill.*, 969 F.2d 250, 253 (7th Cir.1992), and may be useful in weeding out claims and cases obviously lacking merit, *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 709 (10th Cir.1988), overruled on other grounds, *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

## A. STATEMENT OF UNCONTROVERTED FACTS

For the purpose of this motion, the court finds the following facts to be uncontested.[1]

1. Plaintiff Wilbur Lewis is a 79 year old farmer in Osage County, Kansas.

2. On May 2, 1978, plaintiff and his then wife, Joyce Lewis, took out an emergency loan from the defendant agency in the amount of $447,000.00. Pursuant to the terms of the Note, plaintiff was obligated to make an annual payment on the Note in the amount of $37,490.00 for 39 years.

3. Plaintiff's payment history on the note reveals that plaintiff has not made a voluntary payment on the debt since 1982. (97000016 CR at 39 and 97000016 HR at 58). Several "involuntary" payments, in the form of agency offsets of government payments, have been applied since that time. (97000016 CR at 39).

4. In May, 1987, Eric Guenther became FSA's Farm Loan Manager in the Franklin County USDA Service Center located in Ottawa, Kansas. As the Farm Loan Manager, Guenther was responsible for making, approving and servicing loans to farm customers in an eight-county area. Those loans include direct loans, which are loans funded through the agency.

5. As the Farm Loan manager, Mr. Guenther was responsible for the day-to-day servicing of Lewis's account.

6. In November, 1988, the agency initiated 1951–S Servicing (restructuring) of delinquent accounts, including that of Mr. and Mrs. Lewis. In December, 1988, plaintiff applied for loan restructuring with FSA.

7. In March, 1989, plaintiff's restructuring application was denied because of Lewis's inability to cashflow his operation.

8. On October 23, 1989, plaintiff was offered a buyout of $359,199.00, which he did not accept.

9. In November, 1989, plaintiff appealed the agency's decision denying restructuring of his note.

10. A hearing was held on the appeal on April 10, 1990. On April 30, 1990, the hearing officer, Leland Elliott, issued his decision. The hearing officer ordered that a new appraisal be completed and that the production and financial history for the most recent years, 1985–89, be used in processing the restructure application.

11. The National Office reviewed and upheld the hearing officer's decision. A few days after receiving that determination, on June 7, 1990, the agency requested updated financial information from plaintiff pursuant to the hearing officer's decision.

12. Plaintiff timely provided the requested financial information.

13. On July 23, 1990, the agency notified plaintiff of his right to appeal an earlier offset based upon a federal court opinion which gave him new appeal rights. The agency did not take further action on plaintiff's restructuring application at that time.

14. Plaintiff appealed the earlier offset decision and on October 15, 1991, the hear-

---

**1.** Where no citation to the record is made, the facts are deemed to be uncontested by virtue of plaintiff's admissions, plaintiff's failure to controvert such facts in response to the government's motion, or plaintiff's failure to provide evidence in support of its controversions of fact.

ing officer ruled in part in favor of plaintiff and in part in favor of the agency.

15. On September 16, 1991, while the offset appeal was pending, the agency advised plaintiff that an appraisal would be conducted by Eric Guenther and Charles Ricklefs. The appraisal was completed in November, 1991.

16. On November 7, 1991, a few weeks after receiving the decision of the hearing officer, the agency requested updated financial information from plaintiff. Plaintiff provided that information on November 29, 1991.

17. The Lewis's got divorced in November of 1992. After the agency received notice of the finality of the divorce proceedings, the agency requested and received updated financial information from Lewis, but did not receive the information from Mrs. Lewis.

18. In August, 1993, the agency conducted an updated appraisal of plaintiff's property.

19. On December 7, 1993, the agency sent Mr. and Mrs. Lewis a notice of intent to accelerate, stating that Mrs. Lewis had not provided the requested financial information, although she was still a responsible party on the note. (1997000016 CR at 81; Answer, ¶ 38)

20. On February 23, 1994, a hearing was held on Lewis's appeal of the notice of intent to accelerate. On March 23, 1994, the hearing officer issued a decision, concluding that although Mrs. Lewis had quitclaimed all rights, title and interest in the property to Mr. Lewis pursuant to their divorce decree, she remained jointly liable on the debt and had not been released from liability.

21. Because information was still needed with respect to Mrs. Lewis's potential release of liability, the hearing officer found that the notice of intent to accelerate was premature and that decision was reversed. The hearing officer ordered the agency to consider information to be submitted by Mrs. Lewis and determine whether she could meet the criteria for release of liability.

22. After the hearing officer's decision, the agency sent a request for information to Joyce Lewis. Nearly 10 months later, Mrs. Lewis's attorney sent the agency information relevant to Joyce Lewis's liability on the note. (Answer, ¶ 42)

23. In September 1995, the state FSA office advised the county office that Joyce Lewis should be released from the note, and that plaintiff should be given notice of intent to accelerate his loan account for lack of good faith. (Answer, ¶ 44)

24. Without advising Lewis of its decision not to restructure his loan, the agency sent a request for information to plaintiff in January, 1996 and received information from plaintiff in February, 1996. (Answer, ¶ 45)

25. On September 3, 1996, plaintiff was notified of an intent to accelerate his debt and of FSA's denial of his application for restructuring due to his lack of good faith and failure to provide information. (1997000016 CR at 125) Specifically, the notice stated that Lewis was $509,793.19 behind in his scheduled loan payments and had not made a voluntary payment since 1982. (*Id.*) The notice explained that these actions were in violation of Lewis's loan agreements with the Farm Service Agency and disqualified him from meeting the eligibility requirements set forth in FmHA Instruction 1951.909(c). (*Id.*)

26. Plaintiff appealed the agency's decision to deny his restructuring application due to a lack of good faith. A full hearing was held on December 5, 1996 on the lack of good faith issue, after which the hearing officer found that plaintiff had not acted in good faith and that the restructuring has been properly denied.

27. On January, 1997, plaintiff requested a review of the hearing officer's decision and in March, 1997, the director upheld the hearing officer's decision. (1997001258 CR at 164–166)

28. On April 10, 1997, plaintiff's new attorney sent a letter to Guenther regarding the servicing of plaintiff's account. Plaintiff's attorney suggested that plaintiff had been treated in a disparate fashion and noted that another of plaintiff's attorneys had made that allegation approximately seven years before, and requested that the matter be "investigated."

29. Guenther responded to the letter from plaintiff's attorney by restating the proceedings which ultimately resulted in a finding that Lewis had not acted in good faith and in a denial of his restructuring application. That letter stated: "FSA is an Equal Opportunity Lender. Complaints of Discrimination should be sent to: Secretary of Agriculture, Washington D.C. 20250–0700."

30. Plaintiff admits that all correspondence from the agency notified him where to send complaints of discrimination and advised him that FHA is an equal opportunity lender. Further, plaintiff believed that as early as 1990, his attorney, Calvin Williams, made a discrimination complaint against the agency by way of letter to Guenther in which he complained of invidious discrimination.

31. On August 11, 1997, the agency sent plaintiff notice of intent to exercise an administrative offset of plaintiff's account. (1997001258 CR at 143–45) Plaintiff appealed the offset notice.

32. Plaintiff and his attorney met with Guenther on September 9, 1997, concerning the propriety of the administrative offset and the agency's decision to deny plaintiff's restructure application.

33. On January 20, 1998, a hearing was held on plaintiff's appeal of the offset notice. On February 19, 1998, the National Appeals Division hearing officer found that delays in processing Lewis's loan restructuring application from April 1990 to Dec. 1991 were within the agency's control, but upheld the offset. (9700001258 CR at 181–87) Plaintiff sought review of that decision (97001258 CR at 202)

34. On March 2, 1998, plaintiff filed a complaint of age discrimination with the USDA Office of Civil Rights and advised the local agency, by letter to Guenther, that plaintiff wanted no further action taken on his complaint.

35. On May 19, 1998, the hearing officer's decision was upheld by the Director, concluding the administrative appeals process. (1997001258 CR at 177–80).

36. Guenther never advised plaintiff that under no circumstances would the agency restructure plaintiff's note nor did he ever attempt to deter Mrs. Lewis from seeking a release of liability. There were several occasions when Lewis or his attorney, and Guenther discussed the fact that there had been substantial losses on the farming operation. Guenther discussed with Lewis the fact that the financial information provided by Lewis indicated that there was not a positive cash flow and suggested several alternatives, including a voluntary conveyance or selling a portion of the property with the hope of Lewis being able to keep the homestead rather than lose the entire farm. Lewis was not interested in any of these alternatives.

37. Lewis's administrative appeals and divorce proceedings contributed to the delay in processing Lewis's application to restructure his debt. (Dk.55, Exh. C).

## B. ECOA Discrimination Claims

Lewis raises various claims of the government's violation of the Equal Credit Opportunity Act, ("ECOA"), 15 U.S.C. § 1691(a) et seq. The ECOA contains provisions granting applicants certain procedural safeguards, as well as protection against discrimination in credit transactions. It provides:

It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);

15 U.S.C. § 1691. The FSA is a creditor within the meaning of the ECOA, *See* 15 U.S.C. § 1691a(e) and (f), and Lewis is an applicant. *See* 15 U.S.C. § 1691(b). "The ECOA does not create an all-encompassing scheme to regulate all relations between lenders and their potential customers. Instead, it is an effort to ensure that credit is available on a non-discriminatory basis. See 15 U.S.C. § 1691a." *High v. McLean Financial Corp.,* 659 F.Supp. 1561 (D.D.C. 1987). Lewis contends that the FSA discriminated against him on the basis of his age in the manner in which they processed or failed to process his application for loan restructuring.

### 1. Timeliness of age discrimination claim

The court will first address the government's claim that Lewis's age discrimination claim pursuant to ECOA is time-barred. Although Lewis filed this case within the two year statute of limitations applicable to ECOA claims, see 15 U.S.C. § 1691e(f), the government contends that Lewis's failure to timely file his administrative charge of age discrimination with the administrative agency prior to bringing suit bars consideration of his claims here.

It is not contested that Lewis, as a party seeking to affirmatively enforce rights under the ECOA, was required to exhaust his administrative remedies. See 7 U.S.C. § 6912(e); *Federal Deposit Insurance Corporation v. Medmark, Inc.,* 897 F.Supp. 511 (D.Kan.1995); *Bastek v. Federal Crop Ins. Corp.,* 145 F.3d 90, 94 (2d Cir.1998) (finding even in APA-governed cases, if the statute at issue explicitly mandates exhaustion as a prerequisite to judicial review, it must be enforced). Here, it is uncontested that Lewis filed an administrative claim of age discrimination. The sole issue is whether Lewis failed to timely commence the administrative procedure, and if so, whether that untimeliness bars Lewis's present suit.

The relevant regulation requires claims such as Lewis's to be filed "not later than 180 days from the date of the alleged discrimination." 7 C.F.R. § 15.6. Although research has revealed no cases on point, "the purpose behind this regulation appears to be to require the reasonably diligent presentation of tort claims against the Government." See *United States v. Kubrick,* 444 U.S. 111, 123, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (regarding the limitations provision of the FTCA). This regulation, like statutes of limitations generally, represents a "legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time," *id.* at 117, 100 S.Ct. 352, and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 88 L.Ed. 788 (1944). Furthermore, because the ECOA may waive the sovereign immunity of the United States, see *Moore v. United States Department of Agriculture,* 55 F.3d 991 (5th Cir.1995), this court will construe it in a manner which neither extends nor narrows the waiver Congress intended. See *Kubrick, supra,* 444 U.S. at 117–118, 100 S.Ct. 352, and cases cited therein.

The parties agree that Lewis filed an administrative claim with the agency on March 2, 1998, (Dk. 55 p. 9, ¶ 38, and Dk. 62, p. 4, p. 6). It is additionally uncontested that on Sept. 3, 1996, FSA sent Lewis notice of its intent to accelerate payments and deny loan restructuring, and that on August 11, 1997, FSA sent Lewis notice of its intent to exercise an administrative offset on his account. (Dk. 55, p. 7, ¶ 28, and p. 9, ¶ . 35.) Although each of these events is outside the 180 day period, Lewis contends that his administrative filing was nonetheless timely because the agency's discrimination was ongoing, and he filed within 180 days of the final decision in the offset appeal, which was rendered on February 19, 1998. (Dk.27, p. 206–215, 97001258).

### a. Accrual of Limitations

■ Although research has revealed no case addressing this argument in the context of an ECOA discrimination claim, the

court finds no reason to depart from the general rule that in the discrimination context, the cause of action accrues when the individual first receives notice of the adverse action against him, and not when the effects of that action are felt. *Delaware State College v. Ricks,* 449 U.S. 250, 260, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Accrual is not delayed until the employee's discovery of the alleged unlawful nature of the decision. *Marquardt v. Miles, Inc.,* No. 93–2153–JWL, 1994 WL 171698, at *5 (D.Kan. Apr. 14, 1994) (holding retaliatory discharge claim accrues on the date plaintiff receives notice of termination) (*citing Johnston v. Farmers Alliance Mut. Ins. Co.,* 218 Kan. 543, 548, 545 P.2d 312 (1976)), aff'd, 68 F.3d 483, 1995 WL 607625 (10th Cir.1995).

In connection with the accrual of a discrimination claim, " '[w]e may presume that many facts will come to light after the date of [a disciplinary action], and indeed one purpose of a charge and a complaint is to initiate the process of uncovering them.' " *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 558 (10th Cir.1994) (quoting *Olson v. Mobil Oil Corp.,* 904 F.2d 198, 202–03 (4th Cir.1990)). A plaintiff is " 'on notice at the moment' " of the personnel action " 'to inquire whether there was [a] discriminatory motive.' " *Id.* (further quotation omitted); see also *id.* at 559 (" 'To the extent that notice enters the analysis, it is notice of the employer's actions, not the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period.' ") (quoting *Hamilton v. 1st Source Bank,* 928 F.2d 86, 88–89 (4th Cir.1990)). *Hanlen v. Henderson,* 2000 WL 628205 (10th Cir. May 16, 2000) (affirming entry of judgment on plaintiff's Title VII and ADEA claims because plaintiff failed to meet the deadlines for initiating EEO counseling.)

Given the law stated above, which the court finds applicable to this issue, Lewis's age discrimination claims accrued when he first received notice of the adverse actions by FSA, *i.e.,* on August 11, 1997, when

FSA sent Lewis notice of its intent to exercise an administrative offset on his account, and on Sept. 3, 1996, when FSA sent Lewis notice of its intent to accelerate payments and deny loan restructuring. (Dk. 55, p. 7, ¶ 28, and p. 9, ¶. 35.) Neither of these dates is within 180 days of Lewis's filing of his administrative complaint of age discrimination on March 2, 1998, (Dk. 55 p. 9, ¶ 38, and Dk. 62, p. 4, p. 6).

### b. Tolling of the Time Period

 Lewis's sole contention is that the FSA engaged in ongoing violations of the ECOA, entitling him to toll the 180–day limit. Under the continuing violation doctrine, "a plaintiff may recover for incidents which occurred outside the statutory time limit if at least one instance of the alleged discriminatory practice occurred within the limitations period and the earlier acts are part of a 'continuing pattern of discrimination.' " *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1310 (10th Cir. 1999) (quoting *Martin v. Nannie & The Newborns, Inc.,* 3 F.3d 1410, 1415 (10th Cir.1993). There must be "at least one instance of the discriminatory practice within the filing period for the doctrine to apply, and the earlier acts must be part of a continuing policy or practice that includes the act or acts within the statutory period." *Martin,* 3 F.3d at 1415. "It is not sufficient merely that acts outside the required time limit had a continuing effect within the statutory time allowed for suit." *Id.*

The Tenth Circuit has not hesitated to affirm dismissals of discrimination claims that are not timely filed with the administrative agency. *See e.g., Smith v. Park County School District,* 202 F.3d 283 (Table), 1999 WL 1136762 at *1, 2 (10th Cir., Dec. 13, 1999) (affirming district court's dismissal of ADA claim because plaintiff did not file a charge with the EEOC within 300 days of the alleged adverse employment action); *Hanlen,* 2000 WL 628205.

■ Here, no allegedly discriminatory acts by FSA occurred within the 180 day period immediately prior to March 2, 1998. The record discloses only communications between the parties, and a decision by the National Appeals Division on Lewis's appeal of the offset decision. Lewis has failed to show that at least one instance of the alleged discriminatory practice occurred within the relevant time frame. Under these circumstances, the court finds Lewis's ECOA claims of age discrimination to be time barred. The court therefore finds summary judgment appropriate on Lewis's ECOA claims of age discrimination.

## C. ECOA Non–Discrimination Claims

The pretrial order (Dk.71) contains separate claims of ECOA violations, not based on alleged age discrimination. The court rejects the government's assertion that such claims are encompassed within Lewis's administrative appeals, because the ECOA provides for direct civil liability, and supports a cause of action independent of those appeals. ECOA actions apply a different standard of liability and different civil damages provisions, than those found in APA appeals. Although the legal theory of the non-discrimination ECOA claims has not been specified in the pretrial order, the uncontested facts of this case would sustain a finding that at least some such claims may be viable. *See e.g.*, 15 U.S.C. § 1691(d)(1) (requiring that "within thirty days ... after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application"). Lewis may therefore be entitled to recover not only damages and equitable relief, see 15 U.S.C. § 1691e(a), (c), but also a reasonable attorneys' fee. 15 U.S.C. § 1691e(d). Because neither party has moved for summary judgment on the non-discrimination ECOA claims, and neither party has briefed the merits of such claims,[2] the court does not address them at this time except to specify that

they remain unaffected by this ruling. The government's motion is thus for partial summary judgment only.

## D. Due Process and Equal Protection Claims

The government next seeks summary judgment on Lewis's claims that the manner in which the FSA processed, or failed to process, his loan application violated his due process and equal protection rights. The government alleges that the defendant is immune from being sued for these and other constitutional torts. *See Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 483–486, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (*Bivens* actions may not be brought against the United States). Lewis contends that his constitutional tort claims against FSA are brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq ("FTCA"), which expressly provides for suit against the United States for negligence or wrongful ministerial acts of its employees. (Dk.62, p. 19–20).

■ The United States is immune from suit except for those instances where it consents to be sued. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). Accordingly, such consent is a jurisdictional prerequisite to actions brought against the United States. *Id.* The FTCA provides a jurisdictional basis to recover money damages against the United States for the tortious acts of its agents. Specifically, the FTCA authorizes suits against the United States for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance

2. The Pretrial Order states that "supplemental dispositive motions regarding whether plaintiff has alleged an appropriate cause of action will be filed by a date to be set by the court." (Dk. p. 13).

with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

 As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. See 28 U.S.C. § 2675(a); *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir.1999); *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (holding "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"); *Pipkin v. USPS*, 951 F.2d 272, 273 (10th Cir.1991) (holding exhaustion of administrative claims is jurisdictional prerequisite to asserting claims under FTCA). Lewis fails to allege that he has exhausted his administrative remedies, as is required for FTCA claims, thus this court lacks jurisdiction to consider such claims.

 But even if exhaustion were shown, this court would still lack jurisdiction over the FTCA claims. The government may be held liable under the FTCA only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (emphasis added). Lewis's constitutional tort claims are not "cognizable" under § 1346(b) because that section does not provide a cause of action for such a claim. A claim is actionable under the section if it alleges that the United States would be liable as "a private person" "in accordance with the law of the place where the act or omission occurred." A claim such as Lewis's could not contain such an allegation because the reference to the "law of the place" means law of the State, *see, e.g., Miree v. DeKalb County*, 433 U.S. 25, 29, n. 4, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) and, by definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right. *FDIC v. Meyer*, 114 S.Ct. at 998. "The FTCA's local law requirement may not be circumvented mere-

ly by casting the alleged constitutional wrong as negligence." *Chen v. United States*, 674 F.Supp. 1078, 1085 (S.D.N.Y. 1987). Due process and equal protection rights required of the government are required "as a government" and there is no corresponding situation in which a private person would be liable. *See FDIC v. Meyer*, 114 S.Ct. at 998. Therefore, the FTCA, which waives the United States' tort liability to the extent that a private person would be liable in like circumstances, does not apply in a case of deprivation of due process or equal protection rights. *See Chen*, 674 F.Supp. at 1085. Summary judgment is therefore warranted on Lewis's due process and equal protection claims brought pursuant to the FTCA.

## III. ADMINISTRATIVE APPEALS

### A. Statute of Limitations

The USA contends that Lewis's petition for judicial review of the two administrative decisions is untimely, and that these appeals are therefore barred by the statute of limitations. At issue is whether Lewis had six years after the administrative decision to petition for review with this court, pursuant to 28 U.S.C. § 2401, or sixty days to so act, pursuant to Fed. R.App. 4(a).

 28 U.S.C. § 2401(a) (Supp. V 1981) provides in pertinent part: "Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." As the language of § 2401(a) makes clear, the section applies to both equitable and legal claims. See *Saffron v. Department of Navy*, 561 F.2d 938, 946 (D.C.Cir.1977) (McGowan, J., concurring), cert. denied, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978).

The Tenth Circuit has applied 28 U.S.C. § 2401(a) in determining the appropriate time period available to seek judicial review of agency action. See *e.g., Chemical Weapons Working Group v. Dept. of Army*, 111 F.3d 1485, 1494 (10th Cir.1997);

*Federal Lands Legal Foundation v. United States Forest Service,* 13 F.3d 405 (Table), 1993 WL 503166 (10th Cir.1993) ("the statute of limitations generally applicable to suits seeking review of agency action is found at 28 U.S.C. 2401(a)"); *Smith v. Marsh,* 787 F.2d 510, 512 (10th Cir.1986) (holding that the six-year statute of limitations in § 2401(a) applies to "suits seeking nonmonetary relief through nonstatutory review of agency action."). Other circuits have done the same. See e.g., *Southwest Williamson County Community Association, Inc. v. Slater,* 173 F.3d 1033, 1036 (6th Cir.1999); *Village of Elk Grove Village v. Evans,* 997 F.2d 328, 331 (7th Cir. 1993); *Impro Products, Inc. v. Block,* 722 F.2d 845 (D.C.Cir.1983).

The government ignores the above-cited cases, and contends that the sixty-day rule of federal appellate procedure applies, based upon two other Tenth Circuit decisions. The first is *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1580 (10th Cir.1994), in which the court stated:

> A district court is not exclusively a trial court. In addition to its *nisi prius* functions, it must sometimes act as an appellate court. Reviews of agency action in the district courts must be processed as appeals. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure. Motions to affirm and motions for summary judgment are conceptually incompatible with the very nature and purpose of an appeal.

The court finds that this statement addresses solely the manner of substantive review the district court engages in when functioning as an appellate court, and has no application to the issue of which statute of limitations governs administrative appeals.

The second case relied upon by the government is the unpublished decision of the Tenth Circuit in *Luman v. Fields,* 162 F.3d 1173 (Table), 1998 WL 712577(10th Cir. Oct. 13, 1998). There, the Tenth Circuit found that the plaintiff's time for appeal from an adverse decision by the Inte-

rior Board of Indian Appeals had run. Because that administrative decision was in 1993, and the Tenth Circuit's decision barring the appeal based on statute of limitations grounds was in 1998, the government concludes that the six-year statute did not apply there, so must not apply here either. The court does not find *Luman* persuasive because of its absence of detail regarding the nature of the claim before the administrative body, its lack of any indication as to which statute of limitations was applied, and its complete lack of reference to the sixty-day period established by the rules of federal appellate procedure and to the rule itself. In fact, despite the abundance of judicial reviews sought for administrative actions, research has revealed no published case in any jurisdiction ever applying Fed.R.App.Pro. 4(a) as the appropriate statute of limitations for such review.

■ Fed.R.App.Pro. 4(a) states that it applies to appeals "from a district court to a court of appeals." The court finds no reason to extend the reach of this rule to encompass appeals from an administrative agency to a district court, particularly where another statute has long been held to apply to such. The court finds that 28 U.S.C. § 2401(a) establishes the period available for judicial review of the validity of administrative decisions. *See Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967). Although six years strikes the court as an extraordinarily long period of time in which to appeal an administrative decision, the court is bound by the case law set forth above to apply 28 U.S.C. § 2401(a) as the appropriate statute of limitations in this case, and therefore finds Lewis's appeal to this court, which was filed within six years of the final agency decision, to be timely.

### B. Standard of Review

■ The court reviews Lewis's challenges to the offset and denial of loan restructuring under the deferential standard set forth in the APA: "The reviewing court shall ... hold unlawful and set aside

agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Review under § 706(2)(A) is narrow, and the agency need only demonstrate that it considered relevant factors and alternatives after a full ventilation of issues and that the choice it made was reasonable based on that consideration." *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1453 (10th Cir.1994). See *Lodge Tower Condominium Association v. Lodge Properties, Inc.,* 85 F.3d 476, 477 (10th Cir.1996); *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). The court's task is to ensure that the agency observed procedural and substantive requirements imposed by statute or regulation. 5 U.S.C. § 706(2)(C), (D) (1982); see *United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977).

 Evidence is substantial under the APA if it is enough to justify, if the trial were to a jury, a directed verdict on a factual conclusion. *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1575 (10th Cir.1994). Under the substantial evidence test, the court considers conflicts in the record and specifically defines those facts which support the agency's decision. *See Olenhouse,* 42 F.3d at 1576. "This requires a plenary review of the record as it existed before the agency." *Id.* at 1575. *See Rapp v. United States Department of Treasury,* 52 F.3d 1510, 1515 (10th Cir. 1995).

 In reviewing agency action the Court must be guided by "the rule of prejudicial error." 5 U.S.C. § 706 (1996). Even where an agency fails to comply strictly with its requirements, the administrative determinations made will not be set aside in the absence of prejudice to the plaintiff. *Kerner v. Celebrezze,* 340 F.2d 736, 740 (2d Cir.1965), *cert. denied,* 382 U.S. 861, 86 S.Ct. 121, 15 L.Ed.2d 99 (1965); *Sun Oil Co. v. F.P.C.,* 256 F.2d

233, 239 (5th Cir.1958). Procedural irregularities are not per se prejudicial; each case must be determined on its individual facts and, if the errors are deemed to be minor and insubstantial, the administrative order should be enforced notwithstanding. See *Willapoint Oysters v. Ewing,* 174 F.2d 676, 692 (9th Cir.), *cert. denied,* 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949); *N.L.R.B. v. Ed. Friedrich, Inc.,* 116 F.2d 888 (5th Cir.1940). Moreover, 'the burden of showing that prejudice has resulted' is on the party claiming injury from the erroneous rulings. *Ahern v. Webb,* 268 F.2d 45 (10th Cir.1959); *Palmer v. Hoffman,* 318 U.S. 109, 116, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

 The Tenth Circuit has held that prejudicial error is not found where the appellant fails to prove that the outcome of the case would have been different in the absence of the asserted error. *See Gaub v. Federal Aviation Administration,* 996 F.2d 310 (Table) 1993 WL 213757, *2 (10th Cir.1993) (applying harmless error rule conventionally employed in criminal cases to ADA appeal, finding that the outcome of the case would not have been different in the absence of the asserted error, thus no prejudice in the denial of a continuance.) "The harmless error rule applies to judicial review of administrative proceedings. *Trench v. INS,* 783 F.2d 181, 183 (10th Cir.), *cert. denied,* 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986)." *All Indian Pueblo Council v. United States,* 975 F.2d 1437, 1443 (10th Cir.1992).

The facts relevant to the issues in the administrative appeals will be set forth as necessary in the discussion below.

### C. Appeal of Case No. 9700001258 W

Lewis raises three arguments regarding FSA's determination to offset plaintiff's government payments. Lewis challenges the application of administrative offset to government payments he would otherwise have received.[3] The applicable regulations provide that "[w]henever feasible, each agency of the Department of Agriculture

---

**3.** Lewis's Production Flexibility Contract

(PCP) payment for the 1997 crop year was

must use ... administrative offset ... to collect debts due the United States." (Dk. 27, Agency Exh. A–2, p. 129); *See* 7 C.F.R. § 3.23(a) (1990). It is uncontested that on the date the agency used administrative offset, Lewis owed a debt to the FSA, an agency of the Department of Agriculture.

### 1. Conflict of Interest

Lewis first contends that Mr. Eric Guenther, ("Guenther") acted as both the "debt management officer" and the "reviewing officer," depriving him of procedural due process. Acting in both capacities is specifically prohibited by the regulations. As stated in 7 C.F.R. § 3.23(f):

> An agency reviewing officer will afford debtors review of the issue of administrative offset under these rules. No agency employee may act as a reviewing officer for the consideration of collection by administrative offset in a matter for which the employee was a contracting officer or a debt management officer.

The government concedes that Guenther informally reviewed Lewis's offset at Lewis's request and that Guenther was the debt management officer, but denies that Guenther acted as the reviewing officer in the matter.

The regulations define the relevant terms as follow:

> (a) "Debt management officer" means an agency employee responsible for collection by administrative offset of debts owed the United States.
>
> (e) "Reviewing officer" means an agency employee responsible for conducting a hearing or providing documentary review on the existence of the debt and the propriety of administrative offset.

7 C.F.R. § 3.22. The apparent rationale underlying the rule which prohibits a debt management officer from acting as a reviewing officer is that someone other than the person who made the decision should review that decision, to preclude a conflict of interest and to ensure the debtor a fair review.

The government contends that it was incumbent upon Lewis to specifically request a documentary review or hearing with a reviewing officer and that Lewis failed to do so, that Lewis's meeting with Guenther was merely informal and not the type of review conducted by a reviewing officer, and that the hearing officer at the formalized review of the offset decision by the National Appeals Division served as the reviewing officer within the meaning of that term in 7 C.F.R. § 3.22(e).

The facts show that Guenther reviewed the offset in response to Lewis's request for a meeting, pursuant to the offset notice which Lewis received. That notice provides that Lewis was entitled to "a meeting with (his) local FSA credit official," at which time he was permitted to "present any information (he) may have that would dispute the Agency's determination that the offset is necessary." (Dk. 27, p. 144, 97001258). That notice states that Lewis's presentation of a written plan was permissive, in stating that "you may present a written explanation of why the debt is not owed, the amount is not correct, or why administrative offset is otherwise unfair." *Id.* That same notice subsequently states that "at the meeting with the Agency review official" Lewis "may present a written plan" documenting his ability to pay his account current within a short period of time. (Dk. 27, p. 143–144, 97001258).

Contrary to the government's implications, the notice did not require Lewis to specifically request a documentary review or hearing,[4] and the assertion that neither

offset. (Dk.41, p. 23). This determination was upheld by a May 19, 1998 decision of the Director of the National Appeals Division (NAD).

4. 7 C.F.R. § 3.29 provides (a) that "a debtor who receives a Notice of Intent to Collect by Administrative Offset may request a hearing or documentary review of the agency's deter-

mination that the debt exists and the propriety of administrative offset. Any debtor who wishes to do this must submit a written explanation of why the debtor disagrees and seeks review. The request must be received by the creditor agency within 20 calendar days of the date the notice was delivered to the debtor. (b) In response, the creditor agency must

was held in response to Lewis's request for a meeting does not compel the conclusion that Guenther was not acting as a reviewing officer, within the meaning of that term in 7 C.F.R. § 3.22(e), when he met with Lewis. Nor does the contention that Guenther's review was merely informal mean that he was not a reviewing officer. See 7 C.F.R. § 3.29(e)(1), stating that "hearings will be as informal as possible," but providing for procedural safeguards, such as the acceptance of exhibits, and the recording of the substance of all significant matters discussed at the hearing, 7 C.F.R. § 3.29(e)(3), which were not done in Guenther's review.

■ The notice additionally advised Lewis of his right to appeal the offset decision to the National Appeals Division (NAD), which Lewis did. There, he sought and received a face-to face hearing, submitted exhibits, gave testimony, and subsequently received a written decision by a hearing officer, setting forth specific factual findings and the rationale for the conclusions reached therein. (Dk.27, p. 181–187). Additionally, Lewis exercised his right to appeal the decision of the NAD hearing officer, and obtained an independent review of that decision. (Dk.27, 177–180, 97001258). Neither the NAD hearing officer nor the Director who reviewed the hearing officer's decision is, however, an agency employee, as that term is defined. (Dk. 27, p. 184, 97001258 W). By contrast, a reviewing officer is necessarily an agency employee, as Guenther was. See 7 C.F.R. § 3.22(e). Therefore the court rejects the government's assertion that the NAD hearing officer served as the reviewing officer. Under these circumstances, the court finds that Guenther served as both the debt management officer and as the agency review officer, although Guenther did not provide Lewis with all of the procedural protections reviewing officers were required to use.

notify the debtor in writing whether the review will be by documentary review or by

■ Although this court has power to set aside every unlawful agency action, it is not required to do so. The court's decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 673 (9th Cir.1993); *Sierra Pacific Industries v. Lyng*, 866 F.2d 1099, 1111 (9th Cir. 1989). The district court must weigh "the competing claims of injury … and the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987). Here, the risk of error in the preliminary review by Guenther must be balanced against the safeguards subsequently provided Lewis by additional proceedings in which he participated. Because Lewis was provided with and participated in a full evidentiary hearing and administrative appeal on the same issue reviewed by Guenther, no prejudicial error appears. Although the court does not sanction Guenther's acting as both debt management officer and agency review officer, there is little risk of an erroneous deprivation of Lewis's interest in not having his government payment(s) offset through the procedures used, and there would be no value at this point to requiring additional procedures.

### 2. Failure to Stay the Offset Pending Appeal

■ Lewis next complains that his offset was not stayed during the pendency of his appeal of that offset. The record reflects that the FSA sent him a Notice of Immediate Offset, followed by immediate offset, despite the fact that Lewis had already appealed the original offset notice. Lewis contends that FSA's failure to stay the offset violates 7 C.F.R. § 1951.103(f). (Dk.30, p. 27). That regulation, which is now reserved, provided:

(f) when administrative offset is stayed, the creditor agency will immediately no-

hearing."

tify an offsetting agency to withhold the payment pending termination of the stay. The amount of the debt and interest will be withheld from payment to the debtor, but not applied against the debt until the stay expires.

(Dk. 27, p. 134, Agency Exh. A–7). Contrary to Lewis's assertions, nothing in this subsection requires an automatic stay pending the determination of an appeal of an offset.[5]

However, 7 C.F.R. § 3.30(3) provided: "When a review is conducted, the offset is stayed until the creditor agency issues a final written decision." The government does not dispute the applicability of this regulation, but contends that Lewis suffered no harm by virtue of the lack of a stay because the decision to offset was affirmed on administrative appeal, so the offset would have occurred anyway, although at a later date. Additionally, the record reveals the agency's belief that the particular nature of the contract at issue[6] required a payment to the plaintiff by Sept. 30, 1997, precluding the agency from holding the payment, and compelling it to apply the payment by the cutoff date. (Dk. 27, Guenther testimony, ¶.86–90). Regardless of the accuracy of this belief,[7] the agency has not shown that such a contractual agreement provides justification for violation of the law regarding stays. Further, the provisions relied upon by the agency are designed as exceptions to the notice requirements, and not the stay requirements, regarding offsets. (See Dk. 27, Exh. I–4, p. 156; Exh. A–6, p. 133).

The court does not sanction the agency's failure to abide by the regulation requiring a stay, but fails to find any evidence in the record or arguments of counsel that this act caused any prejudice to Lewis, or that the decision to offset would have been different in some manner if the stay had issued. Under these circumstances, because Lewis has not alleged, let alone shown, any prejudice from the failure to stay the offset, (Dk.30, p. 27–28), no cause for reversal appears.

### 3. Lack of Proprietary Manner in Servicing Loan

Lewis next contends that the FSA processed his loan servicing request under 1994–1996 regulations instead of under regulations in place when the application was made, and that the agency was dilatory in servicing his loan, and thus acted in a non-proprietary manner. Lewis has raised identical issues in his appeal of case 970000016, and has more fully briefed these issues therein, thus the Court will consider these contentions below in addressing that appeal, instead of addressing them twice.

### D. Appeal of Case No. 970000016

In this case, the FSA determined that Lewis's failure to act in good faith rendered him ineligible for restructuring of his debt. Lewis contends that the decision to offset was a natural consequence of the agency's failure to act on his application to restructure his debt. Lewis raises three issues in support of his appeal, which follow.

### 1. Alleged Failure to Provide Notice and Act in Timely Manner

Lewis contends that the agency took eight years, instead of the required 60 or 90 days to determine his ineligibility for loan restructuring. See 7 C.F.R. § 1951.909(a), effective in 1988 when Lewis applied for loan restructuring, (requiring that applications be processed within 60 days after application is received); 7

---

5. Although the regulation did provide for a stay in the event the debtor proposed a repayment agreement until the agency determined whether that proposed agreement was acceptable, see 7 C.F.R. § 1951.103(d)(2), at Dk. 27, p. 134, Agency Exh. A–7, these facts are not asserted here, nor is subsection (d) invoked by Lewis.

6. The parties refer to the contract as a "Production Flexibility Contract."

7. No facts are presented to the court for a determination of whether the contract actually required immediate payment, or whether such a requirement would, in effect, preclude a stay.

C.F.R. § 1951.909(a), effective in 1992, (extending processing deadline to 90 days). The government concedes that Lewis applied for debt restructuring in 1988, and that Lewis first received notice of FSA's determination that he was ineligible for debt restructuring in Sept. of 1996. (Dk.41, p. 18). Although the government offers reasonable explanations for some delays in processing Lewis's application, such as Lewis's divorce and the pendency of other administrative appeals, (Dk. 27, Guenther testimony, p. 48–49) it does not challenge the fact that it took too long to process Lewis's application, and the court so finds.

Lewis next alleges that the FSA failed to timely implement the decision of hearing officer Leland Elliott in 1990, requiring FSA to do a new appraisal on Lewis's land and to run a DALR$ program. (Dk.30, p. 43). (DALR$ is an acronym for Debt and Loan Restructuring System) (Dk.30, p. 16). The government expressly concedes that the agency was ordered to do an updated appraisal and obtain cash flow information in order to reconsider Lewis's restructuring application. (Dk.41, p. 18). The government does not challenge Lewis's assertions that no such appraisal was done for one and one-half years, and that no DALR$ program was ever done, despite the fact that most, if not all, of the cash flow information necessary to run such program was already in the agency's possession. The government alleges in response solely that Lewis failed to act in good faith, and that its delay and/or inaction does not render Lewis eligible for loan restructuring, or constitute an exception to the good faith requirement.

The government does not dispute that it had a duty to implement the decision of the hearing officer within a reasonable period of time. Leland's decision was in 1990. The determination that Lewis failed to act in good faith did not occur until 1995. The court fails to understand how the agency's inaction in following a specific directive issued by a hearing officer is somehow justified by a decision which did not occur until five years thereafter. The court finds that the agency was dilatory in not implementing the hearing officer's decision earlier.

Lewis additionally contends that he was not given written notice within ten days of the adverse decision in 1995 that he had not acted in good faith, and that he was not advised of that determination until approximately one year after the agency decision was made. The government admits that the state office determined in September of 1995 that Lewis was ineligible for debt restructuring, and asked the local office to convey that decision to Lewis. (Dk.41, p. 9, ¶.33). The government does not dispute Lewis's assertion that adverse decisions were subject to a ten-day notice period. See 7 U.S.C. § 6994 (requiring the Secretary to provide the participant with written notice "not later than 10 working days after an adverse decision is made that affects the participant"). The government concedes that no notice was sent to Lewis until Sept. 3, 1996, (Dk.41, p. 10, ¶ 38), but contends that this decision was not an "adverse decision" requiring notice to Lewis, but was merely an interoffice memorandum from the state FSA directing the county office to prepare the necessary documents to notify Lewis of his ineligibility. (Dk.41, p. 23).

The court rejects the government's assertion that no decision was actually made by the state FSA in 1995. The state office determined in 1995 that Lewis was ineligible for debt restructuring, and asked the local office to convey that decision to Lewis. The record does not support any inference that any further information was required, or that the decision made by the state FSA was somehow subject to modification by the local office, or that the state FSA decision of Lewis's ineligibility was otherwise conditional. (Dk 27, Guenther testimony, p. 150–151). Nor does the government provide any explanation for its one year delay in notifying Lewis of its determination,[8] except mere oversight, or

8. The local agent attributed the one year delay to "the work load of the office." (Dk. 27,

the work load of the office. The denial of loan restructuring cannot reasonably be considered to be anything but adverse to Lewis. See 7 U.S.C. § 6991(1) (defining "adverse decision" as "an administrative decision made by an officer, employee, or committee of an agency that is adverse to a participant. The term includes a denial of equitable relief by an agency or the failure of an agency to issue a decision or otherwise act on the request of right of the participant.")

The government contends that the notice to Lewis was timely, apparently arguing that the 10 day notice period did not commence until it actually sent Lewis notice of his ineligibility one year after the interoffice memo regarding the same, because that was when Lewis was first adversely affected by the decision. (Dk.41, p. 9, 22–23). Under this rationale, the ten-day notice requirement would be read out of the statute, because no decision would ever have any effect upon a participant until he were to receive notice of it, at which point notice would always be deemed timely.

The court finds that an administrative decision was made in Sept. of 1995 that was adverse to Lewis, and that no timely notice was sent thereafter to Lewis of FSA's determination. On appeal Lewis alleges prejudice from this delay because interest on his account continued to run, his debt continued to increase, and the delinquency on his account interfered with his ability to get operating money for his farm. (Dk.30, p. 36). No evidence was presented at the administrative hearings, however, that would support any finding of prejudice. Given the amount of debt owed prior to the agency's determination to deny loan restructuring, and the long-standing nature of Lewis's delinquency, which existed regardless of the delay in Lewis's receipt of notice of the denial of loan restructuring, the court finds that Lewis has failed to show any prejudice. The agency's delay in notifying him of its denial of loan restructuring did not deprive

Lewis of his opportunity to initiate an administrative appeal of that decision, and any delay attributable to the untimely notice appears to have worked to Lewis's benefit, rather than to his detriment, by permitting him to remain on the farm longer without facing foreclosure proceedings. Nor has Lewis attempted to show that the decision to deny loan restructuring would have been any different had he received notice earlier. Therefore, no prejudicial error is shown.

**2. Alleged Failure to Follow Correct Regulations**

■ Lewis next asserts that FSA erred in applying the regulations in effect in 1996, when Lewis was first notified that he was being denied primary loan servicing because he failed to meet eligibility requirements under 1951.909(c). Instead, Lewis believes FSA should have applied the regulations in existence in 1988 when Lewis first applied for loan restructuring and originally received an adverse decision. Had they done so, Lewis contends that FSA would have had a duty to process his loan application, despite the FSA's finding that Lewis did not act in good faith, and thus was ineligible for the loan. The government cursorily alleges that the agency followed the correct regulations, but provides no analysis whatsoever in support of that conclusion.

The 1988 regulation provides that in the event the borrower does not meet any of the eligibility requirements, one of which is good faith, his application "must be processed to determine whether or not a feasible plan of operation can be developed. Borrowers who do not meet the eligibility criteria ... must be processed in the same manner as a borrower who does not meet the feasibility requirements. *See* § 1951.909(b)(3)(ii) of this subpart." (Dk. 30, Attachment A.) The regulations for borrowers who do not meet the feasibility requirements provide that "the borrower will be sent Attachments 5 and 6 of this subpart" and that "the DALR$ computer

Guenther testimony, p. 53, 123, 151 97000016 W).

printout will be attached to Attachment 5" thereof. Section 1951.909(b)(3)(ii) (Dk. 30, Attachment B.) Attachments 5 and 6 give the borrower 45 days after receipt of notification of ineligibility to purchase the security for net recovery value. (Dk.30, p. 39). *See* § 1951.909(h)(3)(iii), at Dk. 30, Attachment B. To do so, a borrower would settle the debt to FSA by paying an amount equal to FSA's appraised market value of the collateral, less any prior liens. (Dk.30, p. 16). *See* 7 U.S.A. § 2001(c)(6).

The more recent regulation does not specifically provide that applications from ineligible borrowers will be processed to determine whether or not a feasible plan of operation can be developed, but do state that "borrowers who do not meet the eligibility requirements of this section will be notified of the adverse decision by sending attachments 5 and 6, or 5–A and 6–A, of exhibit A of this subpart, as appropriate." 7 C.F.R. § 1951.909(c). This language provides the identical protection afforded by the earlier regulation cited above, but for the requirement that the DALR$ computer printout be included.

The court finds the distinction between the two regulations to be immaterial. Under either regulation, Lewis was entitled to an offer of net recovery buyout, even if he were found to be ineligible for loan restructuring. Lewis has not specified how his failure to receive this offer prejudiced him. The court has reviewed other DALR$ included in the record, and finds that they state the exact amount of net recovery value which Lewis could remit to pay off his FSA loans. (Dk.27, p. 122–123, 1997W001258). On 10/25/89, Lewis's net recovery value amount was $359,199. (*Id.*) Lewis has not alleged that he was able to pay this amount, or any greater one, at any date, and his pleadings would imply that he was not in fact able to do so. (Dk. 46, p. 6, admitting that Lewis "did not have sufficient income to make $37,500.00 payments a year.") Under these facts, the court finds no prejudicial error in the fact that the FSA failed to provide Lewis with another offer of net recovery buyout.

Lewis next challenges the finding that he failed to act in good faith. Both the 1988 and the 1996 regulations require a showing that a borrower has acted in good faith by demonstrating sincerity and honesty in meeting agreements made with the FSA. 7 C.F.R. § 1951.909(c)(2) (Dk. 30, Attachment A.) The 1996 regulation additionally required that a finding of lack of good faith be based on "violations within the borrower's control" and demonstrate "the borrower's intent to violate written agreements: with FSA. 7 C.F.R. § 1951.906"(Dk.27, p. 171, 970000016). Because Lewis's application for loan restructuring and FSA's determination that Lewis failed to act in good faith were both made before the effective date of the 1996 revision, the court relies on the language in the 1988 regulation.

Lewis concedes that he failed to provide information requested by the agency on five occasions in a 14 year period. (Dk.30, p. 39). On two of the five times, Lewis explained to the agency why he did not provide the requested information. (Dk.30, p. 40). Lewis additionally admits that he sold property in 1982, (Dk. 27, Lewis's testimony, p. 132), and that he has not voluntarily made any payments on his debt to the agency since that date. (Dk. 27, Lewis's testimony, p. 58). He does not challenge the finding that he owed over $509,000 in September of 1996. (*See* Dk. 27, p. 125, 97000016). Although Lewis wished to have his loan restructured and to receive a DALR$ printout advising him of what other payment options might be worked out with the agency, he knew that he was responsible to pay $37,490 each year on January 1st beginning in 1980, based upon the terms of the initial promissory note, (Dk.27, p. 31, Ag.Exh. C–1), and letters from the agency which he received every year. (Dk. 27, Lewis testimony, p. 70). Lewis failed to make any payments or partial payments toward that debt since 1982, except by means of offset initiated by the government. Lewis agrees that his tax returns from various years show positive net income from farming, but allege

they fail to take into account his living expenses, payment of taxes, and payments to other creditors. Lewis admits that he kept other creditors current, but did so only to get operating expenses for farming. (Dk. 27, Lewis testimony, p. 104–105, 97000016).

The court is troubled by the repeatedly dilatory, if not cavalier, fashion in which the agency dealt with Lewis in this case and by the agency's failure to follow the applicable procedural regulations governing those dealings, as detailed above. However, the errors relate to procedure, and not to the substance of the decisions rendered. Lewis has failed to show that the procedural errors caused or otherwise contributed to the delinquency of his loan, which gave rise to the offset, or to his nonpayment toward the outstanding balance and failure to provide information, which formed the bases for the finding that Lewis lacked good faith. Lewis has made no showing that if the FSA had acted promptly and had followed the regulations noted above governing procedure, he would have been able to meet the requirements for restructuring his loan, or for avoiding offset of governmental payments.[9]

Lewis presented no information at the administrative hearings that absent the procedural errors, he could have submitted a feasible plan to support the restructuring of his loan. Further, Lewis presented no evidence that if restructured, his loan account would have remained current during the period of time taken to deny his application. Given Lewis's admissions that he has not made a voluntary payment on his debt to the FSA since 1982, that the amount of that debt in March of 1997 was over $509,000, (Dk.27, p. 1, 97000016), and that Lewis chose to pay other creditors instead of the FSA (Dk. 27, Lewis testimony, p. 104–105, 97000016), the court finds no evidence of any prejudicial error. Lew-

is has failed to show that if the procedural errors had not occurred, the decisions regarding his loan restructuring or offset would have been any different.

The court has reviewed the entire administrative record in both cases, and finds that the decisions under review are supported by substantial evidence, were not arbitrary or capricious, and do not reflect any abuse of discretion. Accordingly, for the reasons set forth above, both of the administrative appeals are affirmed.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk.55) is granted as to the ECOA age discrimination claims, the equal protection claims, and the due process claims, and is denied as to all other claims.

IT IS FURTHER ORDERED that the findings of the United States Department of Agriculture which Lewis has appealed pursuant to the APA (Dk.30) are affirmed.

IT IS FURTHER ORDERED that Lewis's Motion for Restraining Order and Injunction (Dk.66) is denied as moot.

IT IS FURTHER ORDERED that a telephone conference regarding Lewis's remaining claims shall be held on July 6, 2000 at 11:00 a.m.

---

9. Lewis alleges that "but for FSA's inaction, payments could have been made or the debt settled" but the record cited fails to support this proposition, *i.e.,* "97001258 HT on total and 97000016 HT at 112–119". (Dk. 30, p. 14 ¶ 63.) The court has reviewed not only these pages, but the entire record, and fails to find any support for this assertion. In the administrative hearing, Lewis contended that because of the violation of procedural regulations, the offset should be found ineffective, (97001258 HT, ¶. 25–26).